UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

GLOBAL CAPITAL PARTNERS FUND LLC,

**Case No. 1: 22-cv-8362**

Plaintiff,

**COMPLAINT**

-against-

JOHN LOCASCIO,

Defendant.
-------------------------------------------------------------------X

Plaintiff, GLOBAL CAPITAL PARTNERS FUND LLC, through counsel, as and for their

Complaint against JOHN LOCASCIO, states the following:

## THE PARTIES

1.     Plaintiff GLOBAL CAPITAL PARTNERS FUND LLC ("GLOBAL" and/or

"Plaintiff") is a domestic corporation organized and existing under the laws of the State of New

York.

2.     GLOBAL maintains its offices at 555 Fifth Avenue, Suite 1501, New York, New

York 10017.

3.     Now and at all other relevant times, GLOBAL is a commercial mortgage lender

conducting business in the State of New York as well as in other locations.

4.     Defendant, JOHN LOCASCIO ("LOCASCIO"), is an individual residing in the

State of California, and maintains residence at 1660 Metro Avenue, Apt. 303, Chula Vista,

California.

7843985.2

## JURISDICTION AND VENUE

5.　　This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because Plaintiff is a citizen of the State of New York, and Defendant LOCASCIO is a citizen of the State of California; and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6.　　Venue for this action is proper and appropriate in the Southern District of New York pursuant to 28 U.S.C.§1391(b)(2), because a substantial part of the events giving rise to the claim(s) occurred within the State of New York as Plaintiff's principal office is New York, New York and the injury from Defendant's conduct occurred in New York, New York, and certain defamatory statements by Defendant that are the subject of this action were made in New York.

## FACTUAL ALLEGATIONS

7.　　Defendant LOCASCIO is the Chief Executive Officer and owner of Vis Viva, Inc., a New York Corporation engaged in, among other things, serving as a broker for financing transactions ("VVI").  VVI's principal office is in Brooklyn, New York, and LOCASCIO regularly conducts business in New York through his activities and operations of VVI.

8.　　In 2022, LOCASCIO and VVI were engaged as loan broker and agent for a company seeking to develop a resort property in the Country of Belize. LOCASIO contacted GLOBAL about obtaining financing and in or around February 2022 submitted a loan application on behalf of its client.

9.　　In June 2022, GLOBAL issued a commitment letter to fund a loan to LOCASCIO's client in the approximate amount of $17,000,000.00. The commitment required payment of a non-refundable 1% commitment fee and was expressly contingent upon a "Lender ordered MAI

2

7843985.2

Appraisal showing satisfactory value." When the appraisal report showed a negative value of the subject property, Global decided it would not proceed with the loan.

10.     Defendant LOCASCIO immediately began to make aggressive demands and threats to GLOBAL, including but not limited to baseless demands that GLOBAL immediately return to all "non-refundable" monies previously paid to GLOBAL.

11.     In an act of unfounded aggression and an attempted extortion, on August 7, 2022, Defendant maliciously sent a threatening email to GLOBAL stating, inter alia, "You have been exposed. Your actions have put me in a bad light and you have put my reputation in jeopardy with my clients. It's time I do the same with you…Bottom line – you have until 5pm Est Wednesday to return all the funds paid back to [Locascio's client's] partners or I will take the necessary actions to expose you. This includes the commitment fee, appraisal fee, and any other cent you have collected. Each 72 hrs that passes without a wire confirmation showing a return of ALL MONEY will lead me to progressing to the next step listed below."

12.     When GLOBAL failed to meet Defendant's fictitious deadline as set forth in the email dated August 7, 2022, to GLOBAL, in a clear and unequivocal act of malice, retaliation and extortion, on August 11, 2022, Defendant created and publicly published false, defamatory and disparaging statements about GLOBAL on the website known as and by the Better Business Bureau.

13.     Specifically, Defendant stated about GLOBAL on the Better Business Bureau website for New York businesses:

> I am writing my experience with the firm know as Global Capital Partners Fund, LLC … These guys are total scam artists and crooks. They have a long history of criminal activity…Global Capital Partners Fund was originally named 18 Prince Street, LLC owned and operated by Randi Marcus – Gregg's wife…. Randi and Gregg Marcus have owned several companies that have been shut down for

7843985.2

legal reasons. They are crooks. These major law [suits] have been announced by Kelly Currie, Acting United States Attorney General for the Eastern District of New York, and David A. Montoya, Inspector General for the Department of Urban Development, and Frederick W. Gibson, Acting Inspector General for the Federal Deposit Insurance Corporation.

14.     Immediately following LOCASCIO publishing of the foregoing statements on the Better Business Bureau, Defendant sent an email to GLOBAL in furtherance of their malicious motivations notifying GLOBAL of this publication, stating: "All see attached.  This is just the beginning.  I think this should have good SEO along with the many many articles that will follow. News Stories.  Personal investigators. I will uncover all your dirt and hidden bodies. People will google your firm and will be flooded with page after page of my story.  Next up I will work with the OIG, the local DA and AG, FBI, and every bureau to bring you down.  It will not end and I will not stop until you return their money."

15.     When GLOBAL failed to meet LOCASCIO's fictitious deadlines, in a further clear and unequivocal act of malice, retaliation and extortion, on or about August 10, 2022, Defendant again created and publicly published false, defamatory and disparaging statements about GLOBAL on the website known as and by Birdeye.

16.     Specifically, LOCASCIO stated about GLOBAL on Birdeye:

I am writing my experience with the firm known as Global Capital Partners Fund, LLC or GCPF…These guys are total scam artists and crooks.  They have a long history of criminal activity.  They use a PR company to try and drown out their bad press – Searchberg.com…These publications are all self written proclamations.  They use intimidation for suing people who leave bad reviews. How do I know? Because I have now been in contact with around 10 others who have had similar experiences as I have.

See links at end for all their court cases.
. . . . .
Randi and Gregg Marcus have owned several companies that have been shut down for legal reasons.  They are crooks.

4

7843985.2

Here's 2 examples, with many more if you research him.

Somerset Investment Corp. – shut down by the FHA and HUD
… . .
Gettysburg Funding Corp

17.    On or about August 11, 2022, LOCASCIO also published false, defamatory and disparaging statements about GLOBAL on the Google website.

18.    The false, defamatory and disparaging statements published on Google included: "These guys are total scam artists and crooks"; "They have a long history of criminal activity"; "They use intimidation for suing people who leave bad reviews. How do I know? Because I have now been in contact with 10 others who have had similar experiences as I have."; "Mr. Marcus has decades of criminal history"; "Randi and Gregg Marcus have owned several companies that have been shut down for legal reasons.  They are crooks"; and "These major law [suits] have been announced by Kelly Currie, Acting United States Attorney General for the Eastern District of New York, and David A. Montoya, Inspector General for the Department of Urban Development, and Frederick W. Gibson, Acting Inspector General for the Federal Deposit Insurance Corporation."

19.    Upon information and belief, LOCASCIO published similar false and defamatory statements on other websites in addition to the statements made on Better Business Bureau, Birdeye and Google.

20.    The statements referenced above made and published by LOCASCIO on Better Business Bureau, Birdeye and Google were precise in their meaning so as to give rise to clear factual implications which are false and unfounded.

21.    Specifically, the following statements by LOCASCIO are false, libelous, disparaging and defamatory: (a) GLOBAL is operated by total scam artists and crooks; (b) GLOBAL is a scam artist and crook; (c) GLOBAL's principals have a long history of criminal

7843985.2

activity; (d) major lawsuits by various prosecutorial bodies and federal agencies were brought by various prosecutorial bodies and federal agencies against GLOBAL, its principals and its principals' prior business ventures; (e) GLOBAL is currently the subject of major lawsuits by various prosecutorial bodies and federal agencies; (f) companies previously owned by GLOBAL's principal Gregg and his wife Randi Marcus "were shut down for legal reasons"; (g) "Somerset Investors Corp" was "shut down by the FHA and HUD;" and (h) that Gettysburg Funding Corp was shut down for legal reasons.

22.     The aforementioned statements made and published by LOCASCIO are easily disproven by verifiable facts and/or are objectively capable of disproof.

23.     The aforementioned statements made and published by LOCASCIO are not characterized as opinion but rather as fact.

24.     The context of the aforementioned statements made and published by Defendant were made with malice and solely as a means of retaliation and to injure the reputation and goodwill of GLOBAL and its principal(s) without any factual basis.

25.     Upon information and belief, LOCASCIO has fraudulently held himself out to be Gregg Pierce and/or Gregg Marcus on certain business-to-business websites, such as BUYERS ZONE.com, and fraudulently purported to submit inquiries on Gregg Pierce and/or Gregg Marcus to businesses, such as moving companies, payroll companies and collection agencies, in order to cause such the businesses to contact GLOBAL in connection with the fraudulent inquiries and cause undue harassment, clogging GLOBAL's phone lines, and diverting the time and attention of GLOBAL's personnel to respond to the fraudulent inquirers.

7843985.2

## AS AND FOR A FIRST CAUSE OF ACTION
### (Libel *Per Se*)

26.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 25 as if more fully set forth at length herein.

27.     On August 10 and 11, 2022, Defendant made false and disparaging statements falsely attacking GLOBAL's business, business practices, professionalism, ethics, ability, honesty, truthfulness and integrity, on the Better Business Bureau, Birdeye and Google websites.

28.     The following defamatory statements make false and disparaging statements about GLOBAL's professional standing as a hard money/commercial lender and attacking GLOBAL's skill, professionalism, ethics, ability, honesty, truthfulness and integrity by falsely stating that (a) GLOBAL is operated by scam artists and crooks; (b) GLOBAL is a scam artist and crook; (c) GLOBAL's principals have a long history of criminal activity; (d) major lawsuits by various prosecutorial bodies and federal agencies were brought by various prosecutorial bodies and federal agencies; (e) GLOBAL is currently the subject of major lawsuits by various prosecutorial bodies and federal agencies; (f) companies previously owned by GLOBAL's principal Gregg and his wife Randi Marcus "were shut down for legal reasons"; (g) "Somerset Investors Corp" was "shut down by the FHA and HUD;" and (h) that Gettysburg Funding Corp was shut down for legal reasons.

29.     The above-mentioned statements are false and defamatory.

30.     The above-mentioned statements publicly published by Defendant constitute Libel Per Se in that they negatively reflect upon and disparage Plaintiff's professional standing and abilities as a hard money/commercial lender, and Plaintiff's ethics, honesty, truthfulness and integrity.

31.     The above-mentioned statements publicly published by Defendant LOCASCIO further constitute Libel Per Se in that they falsely allege that (a) Plaintiff acted in an unethical

7843985.2

fashion in its business dealings with Defendant, (b) Plaintiff continues to act in an unethical fashion, and (c) GLOBAL's alleged behavior in this regard has been recognized as being unlawful by Kelly Currie, Acting United States Attorney General for the Eastern District of New York, and David A. Montoya, Inspector General for the Department of Urban Development, and Frederick W. Gibson, Acting Inspector General for the Federal Deposit Insurance Corporation -- who Defendant falsely claims have all commenced lawsuits against GLOBAL.

32.     The above-mentioned statements publicly published by Defendant further constitute Libel Per Se in that they allege and attribute to GLOBAL a history of criminal activity, that they are "crooks", and that prior businesses in which GLOBAL's principal, Gregg Marcus and his ex-wife Randi Marcus were affiliated with were "shut down for legal reasons" and by the "FHA and HUD".

33.     The above-mentioned statements publicly published by Defendant are false and defamatory and expose GLOBAL to public hatred, contempt, ridicule, disgrace, and obloquy.

34.     Since Defendant publicly published the false and defamatory statements on the Better Business Bureau, Birdeye and Google, their libelous statements have been viewed by multiple individuals.

35.     Defendant made the defamatory statements described above knowing that they were false and without any reasonable basis and/or fact to make such statements.

36.     Defendant made the defamatory statements described above with reckless disregard for their truth and/or falsity.

37.     Defendant knew that he had no reliable and/or unbiased evidence or information supporting the above-mentioned statements.

7843985.2

38.     Defendant failed to properly determine the truth and/or falsity of their libelous statements prior to publishing the above-mentioned defamatory statements.

39.     The defamatory statements were made with malice.

40.     As a direct and proximate result of the defamatory statements published by Defendant, Plaintiff's good name and reputation in its profession and trade as a commercial lender and business operator for high quality, professionalism, skill, ability, honesty, integrity, and ethics have been injured and damaged.

41.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but which should not be less than $2,500,000.00, and for punitive damages in an amount to be determined at trial against Defendant.

## AS AND FOR A SECOND CAUSE OF ACTION
### (INJURIOUS FALSEHOOD)

42.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 41 as if more fully set forth at length herein.

43.     The defamatory statements published by Defendant irreparably harmed Plaintiff's good name, reputation, and credit as a commercial lender and business operator resulting in the damage of business relations.

44.     The publication of the above-mentioned defamatory statements by Defendant falsely put potential and current customers on notice that Plaintiff's skill, professionalism, ethics, ability, honesty, truthfulness and integrity are poor, below standard, and/or are substandard, that Plaintiff and its employees are, *inter alia*, "crooks" who "have a long history of criminal activity", have had "several companies shut down for legal reasons" including those "shut down by the FHA and HUD".

7843985.2

45.     As a result of the malicious and intentional infliction of harm without excuse or justification, Defendant's defamatory statements caused Plaintiff, with the intent to cause injury, to lose a potential business opportunity with an entity that was prepared to enter into a transaction with Plaintiff that would have generated approximately $1.2 million in fees for Plaintiff, and also to lose another potential business opportunity with another entity was prepared to enter into a transaction with Plaintiff that would have generated approximately $1 million in fees for Plaintiff.

46.     Upon information and belief, Plaintiff lost additional potential business opportunities with potential parties that were interested in entering into business transactions with Plaintiff.

47.     Plaintiff respectfully submits that in making the injurious, false, defamatory, and disparaging statements, Defendant, acted with malice, actual malice, oppression, or fraud, and is thus responsible for punitive damages in an amount to be determined at trial.

48.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but which should not be less than $2,500,000.00, and for punitive damages in an amount to be determined at trial against Defendant.

## AS AND FOR A THIRD CAUSE OF ACTION
## (DISPARAGEMENT)

49.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 48 as if more fully set forth at length herein.

50.     Defendant published false and disparaging statements about Plaintiff's professional abilities as a commercial lender and business operator including its skill, professionalism, ethics, ability, honesty, truthfulness and integrity alleging, *inter alia*, Plaintiff and their business are "crooks" who "have a long history of criminal activity", have had "several companies shut down for legal reasons" including those "shut down by the FHA and HUD".

10

7843985.2

51.     Defendant knew that these statements were false, or recklessly disregarded the possibility that they were false.

52.     Defendant did not retract the false and/or recklessly made statements.

53.     Defendant had no absolute or qualified privileges protecting the false statements.

54.     Plaintiff suffered special damages and harm to their reputation and good will among their employees, peers, colleagues, and their community resulting from Defendant' publication of the false and/or recklessly made statements.

55.     As a result of the malicious and intentional infliction of harm without excuse or justification, Defendant's defamatory statements caused Plaintiff, with the intent to cause injury, to lose a potential business opportunity with an entity that was prepared to enter into a transaction with Plaintiff that would have generated approximately $1.2 million in fees for Plaintiff, and also to lose another potential business opportunity with another entity was prepared to enter into a transaction with Plaintiff that would have generated approximately $1 million in fees for Plaintiff.

56.     Upon information and belief, Plaintiff lost additional potential business opportunities with potential parties that were interested in entering into business transactions with Plaintiff.

57.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but which should not be less than $2,500,000.00, and for punitive damages in an amount to be determined at trial against Defendant.


**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Tortious Interference with Business Relations)**

58.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 57 as if more fully set forth at length herein.

11

7843985.2

59.     Through Defendant' defamatory statements, Plaintiff has lost potential customer(s), which whom it had a reasonable expectation of entering into loan application(s) and commitment(s) to lend money.

60.     Defendant's defamatory statements caused Plaintiff, with the intent to cause injury, to lose a potential business opportunity with an entity that was prepared to enter into a transaction with Plaintiff that would have generated approximately $1.2 million in fees for Plaintiff, and also to lose another potential business opportunity with another entity was prepared to enter into a transaction with Plaintiff that would have generated approximately $1 million in fees for Plaintiff.

61.     Upon information and belief, Plaintiff lost additional potential business opportunities with potential parties that were interested in entering into business transactions with Plaintiff.

62.     As a result of Defendant's defamatory statements and the publishing of same on Better Business Bureau, Birdeye and Google, Plaintiff has suffered and is suffering substantial economic injury for the loss of prospective customers and business.

63.     That Plaintiff has suffered damages as a proximate cause of Defendant' defamatory statements in an amount to be determined at trial but which should not be less than $2,500,000.00.

**PRAYER FOR RELIEF**

**WHEREFORE,** the GLOBAL prays that this Court enter an order and judgment in its favor and against Defendant awarding the GLOBAL:

(a) On its First Cause of Action in an amount to be determined at trial but which should not be less than $2,500,000.00, and for punitive damages in an amount to be determined at trial;

7843985.2

(b) On its Second Cause of Action in an amount to be determined at trial but which should not be less than $2,500,000.00, and for punitive damages in an amount to be determined at trial;

(c) On its Third Cause of Action in an amount to be determined at trial but which should not be less than $2,500.000.00, and for punitive damages in an amount to be determined at trial;

(d) On its Fourth Cause of Action in an amount to be determined at trial but which should not be less than $2,500,000.00, and for punitive damages in an amount to be determined at trial;

(e) All together with interest, costs, disbursements and legal fees incurred in this action; and

(f) Such other and further relief as the Court may deem just and proper.

Dated: East Meadow, New York
        September 30, 2022

CERTILMAN, BALIN, HYMAN & ADLER, LLP

  s/ Paul Sweeney
By:  Paul Sweeney, Esq.
*Attorneys for Plaintiff*
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000
ps@cbah.com

13

7843985.2